## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST,**<br><br>**3426 Toringdon Way**<br>**Charlotte, N.C. 28277**<br><br>**Plaintiff,**<br><br>v.<br><br>**UPPER SOUTHAMPTON MUNICIPAL AUTHORITY,**<br><br>**945 Street Rd.**<br>**Southampton, Pennsylvania 18966**<br><br>**Defendant.** | Civ. Action No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Selective Insurance Company of the Southeast as and for its Complaint against Defendant Upper Southampton Municipal Authority states and alleges as follows:

## PARTIES

1.     Plaintiff Selective Insurance Company of the Southeast ("**Selective**") is a corporation organized and existing under the laws of State of Indiana, duly licensed and registered to transact insurance in the Commonwealth of Pennsylvania, with its principal place of business at 3426 Toringdon Way, Charlotte, N.C. 28277.

2.     Defendant Upper Southampton Municipal Authority ("**USMA**") is a governmental entity organized and existing under the laws of the Commonwealth of

Pennsylvania, with its principal place of business at 945 Street Rd., Southampton (Bucks County), Pennsylvania 18966.

## JURISDICTION

3.      Selective brings this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202.  An actual controversy exists between the parties concerning coverage under a policy of insurance issued by Selective (**Exhibit A**), as more fully alleged herein.

4.      Jurisdiction of this Court is based upon 28 U.S.C. § 1332 (diversity of citizenship).  Plaintiff (an out-of-state corporation) and Defendant (a municipal authority) are citizens of different states and the amount in controversy exceeds $75,000, as more fully alleged herein.

5.      The Court has personal jurisdiction over Defendant because Upper Southampton is organized under the laws of this Commonwealth and has its principal place of business in this District.

6.      Pursuant to 28 U.S.C. § 1391, venue is proper in this District because (i) a substantial part of the transactions and issues giving rise to Plaintiff's claims occurred in this District; and (ii) Defendant USMA is subject the personal jurisdiction of this Court.

7.      All necessary parties have been joined to this Action.

## UNDERLYING ACTION

8.      There is a civil action pending against USMA in the Pennsylvania Court of Common Pleas of Bucks County captioned *Leah Plajer, et al. v. Upper Southampton Municipal Authority, et al.*, (case no. 2017-04013-0, filed June 19, 2017) ("**Underlying**

- 2 -

Action"). (The Plajers and the Cundaris, plaintiffs in the Underlying Action, alleged therein to be the owners and/or residents of the Subject Property (as defined herein), are referred to in this Complaint as the "**Underlying Plaintiffs**"). A true and correct copy of the complaint in the Underlying Action ("**Underlying Complaint**") is attached to this Complaint as **Exhibit B**.

9. The Underlying Complaint alleges counts against USMA in Trespass (Count I), Nuisance (Count II), Inverse Condemnation (Count III) and Negligence (Count IV). (An additional count for Violation of State, Federal, Statutory and Constitutional Law (Count V) was dismissed by court order while the Underlying Action was pending on removal in the United States District Court of the Eastern District of Pennsylvania (Civ. No. 17-3291, ECF Doc. 13), prior to its remand back to the Court of Common Pleas.)

10. The Underlying Action alleges that at least since 1997 sewage from USMA's sewage system and pipes was backing up and being discharged onto the Underlying Plaintiffs' property at 840 Bristol Rd., Southampton, Pennsylvania ("**Subject Property**"), and that USMA has been aware of this sewage discharge at the Subject Property since at least 1997.

11. The Underlying Complaint alleges, among other allegations:

a. "USMA provides municipally-controlled sewage services and controls sewage pipers in and around the [Underlying] Plaintiffs' property;"

b. "there is regular infiltration of run-off and storm water into the sewage system piper owned and operated by USMA, such that during moderate to heavy rain events, the capacity of these pipes becomes greatly stressed, causing substantial pressure to be placed on adjoining pipes that feed individual property owners' outflow pipes;"

c. "dating back to at least February of 1997, USMA became aware of the fact that during periods of heavy precipitation, a back-up of sewage was

draining into the pipes and ultimately into the property of [Underlying] Plaintiffs;"

    **d**.    "an agreement was reached between USMA and the property owner at that time of 840 Bristol Road, that the Defendant [USMA] would install a check valve at the intersection of the property owners' sewer pipe and the main owned by USMA so as to attempt to avoid further sewage back-ups onto the property at 840 Bristol Rd.,"

    **e**.    "USMA acknowledged that [USMA] could still be placing its sewage into the property and therefore said property owner would not be precluded from bringing a claim in the event of damage from a future sewer back-up;'

    **f**.    "Since 2009, [Underlying] Plaintiffs have continually experienced sewer back-ups emanating from the main line controlled by USMA .... [W]ith increasing heavy precipitation, [Underlying] Plaintiffs regularly experience raw sewage coming from the main line onto their property, into their home and flowing out behind their home to a public body of water;"

    **g**.    "These regular events of sewage back-up create serious and extensive impacts to [Underlying] Plaintiffs … including … a constant need to have Defendant [USMA] come to their home with an attempted 'clean-up of the raw sewage released into their yard …;"

    **h**.    "Defendant [USMA] [has] been aware of this situation for at least twenty (20) years and [has] done nothing more to help [Underlying] Plaintiffs with this situation … [and has] been aware that [it] is in violation of multiple [laws];"

    **i**.    "Defendant [USMA] [has] continuously since 2009 allowed raw sewage to enter the property and premises owned and resided by [Underlying] Plaintiffs … [and has] allowed this unhealthy, foul-smelling and inhumane material to enter the [Underlying] Plaintiffs' property …:"

**j**.     "These actions have been wanton, willful, without any regard to the physical, emotional or economic well-being of [Underlying] Plaintiffs, and have been  undertaken with callous disregard for the interests and rights of the [Underlying] Plaintiffs;"  and

**k**.     "Defendant [USMA has] known for years that that any and all combinations of system capacity, flow control, external incursion and other factors would make it difficult if not impossible to avoid the backflow of raw sewage into [Underlying] Plaintiffs' sewer pipe and ultimately onto their property … [and] Defendant [USMA] continued to undertake such actions and chose to ignore others allowing for the continual incursion of untreated sewage to find its way onto [Underlying] Plaintiffs' property …."

Underlying Complaint (Ex. B) paras. 3, 9-15, 26, 34-38.

13.     Since at least 1997 sewage from USMA's sewage system and pipes has been backing up and is being discharged onto the Underlying Plaintiffs' property at 840 Bristol Rd., Southampton, Pennsylvania ("**Subject Property**"), and USMA has known of and been aware of this sewage discharge at the Subject Property since at least 1997.

14.     A true and correct copy of the agreement alleged in the Underlying Complaint (para. 10) between USMA and the former property owner of the Subject Property (840 Bristol Road) concerning installation of a check valve at the Underlying Property (**"Check Valve Agreement"**), is attached to this Complaint as **Exhibit C**.   The Check Valve Agreement was entered into and signed by or on behalf of USMA on or about February 20, 1997.

15.     The Check Valve Agreement recites that the "Property Owner has experienced during periods of heavy precipitation a backup of sewage into the drain and on to the Property Owner's lawn."   The Check Valve Agreement provides that USMA "agrees to install at

- 5 -

[USMA's] cost, a check valve on the sewer lateral of the Property Owner's residence." (Ex. C).

16.     Underlying Plaintiffs are seeking damages in the Underlying Action from USMA (or from USMA jointly and severally with the other defendant in the Underlying Action)  up to the entire value of the Subject Property.  According to Bucks County (Pennsylvania) real property records, the current estimated market value of the Subject Property is $431,920 (as of Jan. 2020).  True and correct copies of pages from the Bucks County (Pennsylvania) internet real property records concerning the Subject Property are attached     to     this     Complaint     as     **Exhibit D**     (available     at < http://www.buckscountyboa.org/pt/search/commonsearch.aspx?mode=address >). Underlying Plaintiffs also seek punitive damages against USMA in the Underlying Action.

17.     Co-defendant in the Underlying Action Northampton Bucks County Municipal Authority ("**NBCMA**") has asserted a crossclaim in the Underlying Action against USMA ("**Crossclaim**") alleging that "if [NBCMA] is liable to [Underlying Plaintiffs] for all or part of such damages the plaintiffs may have suffered, [USMA] is liable to [NBCMA] by way of contribution and/or indemnity" and seeking "judgment in [NBCMA's] favor and against co-defendant [USMA] ...."

## POLICY

18.     Selective issued a policy of insurance to Defendant USMA, policy number S 2242557, for the period July 1, 2016 to July 1, 2017 ("**Policy**").   A true and correct copy of the Policy is attached to this Complaint as **Exhibit A**.

19.     Selective first insured USMA starting July 1, 2015.

20.     The Policy provides insurance coverage to USMA on the terms and conditions, and subject to the limitations and exclusions, as stated in the Policy.  The coverages available under the Policy include Commercial General Liability Coverage for up to $1,000,000 per occurrence with an aggregate limit of $3,000,000.

21.     The Policy excludes or does not provide coverage for (among other exclusions and limitations): property damage caused by pollution, including sewage; damages known to the insured prior to the time of the Policy; damages intentionally caused by the insured; damages not caused by an occurrence; damages not occurring during the Policy period; punitive damages, and condemnation.

22.     The Policy (among other terms and provisions) states and provides:

a.     **Occurrence, Policy Period and Knowledge of Occurrence**

"b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

(3)     Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period."

and

""Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

and

""Property damage" means:

a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it."

and

""Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

- 8 -

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur."

Policy (Ex. A) - Commercial General Liability Coverage Form (CG 00 01 04 13) - Section I - Coverages, Coverage A - Bodily Injury And Property Damage Liability, 1. Insuring Agreement, and Section V - Definitions, Definitions 13 & 17.

**b.     Expected Or Intended Injury and Duty to Give Notice**

This insurance does not apply to:

""Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property."

and

"Duties In The Event Of Occurrence, Offense, Claim Or Suit

a.     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

…

b.     If a claim is made or "suit" is brought against any insured, you must:

(1)    Immediately record the specifics of the claim or "suit" and the date received; and

(2)    Notify us as soon as practicable. …

c.     You and any other involved insured must:

(1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" …"

Policy (Ex. A) - Commercial General Liability Coverage Form (CG 00 01 04 13) - Section I - Coverages, Coverage A, 2. Exclusions,  a. Expected Or Intended Injury and Section IV - Commercial General Liability Conditions - 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit.

4815-3549-2531.1

c.      **Pollution**

"This insurance does not apply to:

f.      Pollution

(1)      "Bodily injury" or "property damage" arising out of the actual, alleged or threatened dis-charge, dispersal, seepage, migration, release or escape of "pollutants":

(a)      At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i)      "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii)      "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii)      "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b)      At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)      Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i)      Any insured; or

(ii)    Any person or organization for whom you may be legally responsible; or

(d)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or sub-contractor. However, this subparagraph does not apply to:

(i)    "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property dam-age" arises out of the intentional dis-charge, dispersal or release of the fuels, lubricants or other operating flu-ids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be dis-charged, dispersed or released as part of the operations being per-formed by such insured, contractor or subcontractor;

(ii)    "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii)    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

- 11 -

(2)     Any loss, cost or expense arising out of any:

(a)     Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b)     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a govern-mental authority."

and

""Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Policy (Ex. A) - Commercial General Liability Coverage Form (CG 00 01 04 13) - Section I - Coverages, Coverage A, 2. Exclusions, f. Pollution, and , and Section V - Definitions, Definition 15.

### d.     Sewage Overflow

"The following language is added at the end of Exclusion (f):

In addition, Exclusion (f) Pollution does not apply to sewage overflow or backup provided that all of the following apply:

> a.     There was a construction, maintenance, operation or repair defect in the insured's "sewage disposal system;"
>
> b.     The defect was the substantial proximate cause of the "sewage disposal event;"

c.      The overflow or backup is a "sewage disposal event," as defined in this Coverage Extension.

Exclusions to this Coverage Extension:

With respect to the coverage provided by this Coverage Extension, this insurance does not apply to the overflow or backup of sewage, the proximate cause of which is any of the following:

a.      An obstruction in a "service lead" that was not caused by the insured; b. Any connection from the affected real property to the "sewage disposal system" including but not limited to a sump system, backflow preventer, building drain, surface drain, gutter or downspout; …."

Policy (Ex. A) - Limited Extension of Coverage for Sewage Overflow or Backup (CG 79 54 10 09) – A ("The following is added to Section I — Coverages").

e.      **Sewage Overflow Definitions**

"Solely with respect to the coverage provided by this Coverage Extension:

1.      "Service lead" means an instrumentality that connects an affected property, including a structure, fixture, or improvement on the affected property, to the "sewage disposal system" and that is neither owned nor maintained by the insured;

2.      "Sewage disposal system" means all interceptor sewers, storm sewers, sanitary sewers, combined sanitary and storm sewers, sewage treatment plants and all other plants, works, instrumentalities and properties used or useful in connection with the collection, treatment and disposal of sewage and industrial wastes and includes a storm water drain system under the jurisdiction and control of a governmental agency.

3.      "Sewage disposal system event" or "event" means the overflow or backup of a "sewage disposal system" onto real property.

4815-3549-2531.1

4.      "Substantial proximate cause" means a proximate cause that was 50% or more of the cause of the "event" and the "property damage" or "bodily injury.""

Policy (Ex. A) - Limited Extension of Coverage for Sewage Overflow or Backup (CG 79 54 10 09) - Definitions.

**f.      Contractual Liability**

"2.      Exclusions

This insurance does not apply to:

b.      Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)      That the insured would have in the absence of the contract or agreement; or

(2)      Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses

incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property dam-age", provided:

(a)      Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)      Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged."

and

"9.      "Insured contract" means: …

- 14 -

4815-3549-2531.1

f.      That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third per-son or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. …"

Policy (Ex. A) - Commercial General Liability Coverage Form (CG 00 01 04 13) - Section I - Coverages, Coverage A - 2. Exclusions,  b. Contractual Liability and Section V – Definitions, Definition 9.

**g.      Who is an Insured**

"1.      If you are designated in the Declarations as:

d.      An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders."

and

"6.      "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document."

Policy (Ex. A) – Commercial General Liability Coverage Form (CG 00 01 04 13) - Coverage A - Section II - Who Is An Insured and Section V – Definitions, Definition 6; *see also* Policy – ElitePac General Liability Extension Emergency Services and Governmental Commercial General Liability (CG 70 51 12 14) - Section II - Who Is An Insured – Amendments Functional Additional Insureds.

- 15 -

**h.**     **Punitive Damages**

"This insurance does not apply to:

4.        Punitive or exemplary damages."

Policy - Commercial General Liability Coverage Form (CG 00 01 04 13) - Section I - Coverages, Coverage A - 2. Exclusions, Exclusion 4.


23.     Other terms, conditions, limitations and exclusions of the Policy (Ex. A) may also limit or exclude, or relate to the limitation or exclusion of, coverage under the Policy.

24.     Any and all damages in, or otherwise arising from the facts and actions alleged in, the Underlying Complaint are not covered by, or are excluded from coverage under, the terms, conditions, limitations and exclusions of the Selective Policy.  Selective is not liable to USMA for any such damages, coverage or defense costs.

## COVERAGE

25.     There is no coverage under the Policy for damages arising out of the events alleged in the Underlying Complaint for any liability that may be found against USMA in the Underlying Action or for any defense costs for USMA in the Underlying Action.

26.     The Policy excludes coverage for, among other exclusions, and/or does not provide coverage for, damages (and defense costs) arising from:

a.        pollution, including sewage (except to the limited extent, not applicable here, included, but then not excluded, from the Limited Extension of Coverage for Sewage Overflow or Backup);

**b.**  damages known to the insured USMA prior to the time of the Policy (including any continuation, change or resumption of such property damage during or after the policy period) or as to which USMA did not give timely notice to Selective;

**c.**  damages intentionally caused by the insured (expected or intended from the standpoint of the insured);

**d.**  damages not caused by an "occurrence" (as defined in the Policy) or not occurring during the Policy period;

**e.**  punitive damages, and

**f.**  condemnation.

27.  The damages sought against USMA in the Underlying Action are, constitute and/or arise from:

**a.**  pollution, as excluded by the Policy;

**b.**  sewage, as excluded and not otherwise covered by the Policy;

**c.**  events and damages known to USMA prior to the time of the Policy (including the continuation, change or resumption of such damage during or after the policy period), and an occurrence as to which USMA did not give timely notice to Selective;

**d.**  damages intentionally caused by the insured and/or damages expected or intended from the standpoint of the insured;

**e.**  damages not caused by an occurrence and/or not occurring during the Policy period;

**f.**  at least in part, punitive damages, excluded from the Policy; and

**g.**  at least in part, condemnation, not covered by the Policy.

4815-3549-2531.1

28.     The damages sought against USMA in the Underlying Action are or may also not be covered or are excluded under other terms, conditions, limitations and exclusions of the Policy.

29.     Any and all damages in, or otherwise arising from the facts and actions alleged in the Underlying Complaint are not covered by, or are excluded from coverage under, the Selective Policy.  Selective is not liable to USMA for any such damages, coverage or defense costs.

30.     The damages sought against USMA in the Crossclaim in the Underlying Action are not covered by, or are excluded from coverage under, the Policy for the same terms, conditions, limitations and exclusions alleged herein as to the damages in the Underlying Complaint.

**DISPUTE**

31.     USMA made a claim to Selective for coverage under the Policy for any damages for which USMA may be held liable arising out of the events alleged in the Underlying Action.

32.     Selective, upon review of the facts alleged in the Underlying Complaint and the terms and conditions of the Policy, informed USMA that there is no coverage under the Policy for damages arising out of the events alleged in the Underlying Action.  Specifically, Selective informed USMA that "one or more of the claims being asserted in the Lawsuit do not appear to qualify for coverage."

4815-3549-2531.1

33.     Selective informed USMA that Selective was reserving all of its rights under the Policy.  Selective specifically informed USMA that "[a]ll rights, whether mentioned in this letter or not, are hereby expressly reserved, and no acts or failure to act by Selective are intended, nor shall they be construed, as a waiver of any of Selective's rights under the Policy." Among the rights Selective reserved, Selective informed USMA that "Selective may restrict or deny full or partial coverage" and that Selective reserved "the right to modify, change or update our coverage position …."

34.     Notwithstanding Selective's determination that the claims in the Underlying Action are not covered by the Policy, Selective has offered to provide, and has provided and is paying for, a defense for USMA in the Underlying Action, subject to a reservation of all of Selective's rights (including the right to withdraw the defense and recover from USMA any defense costs paid by Selective on behalf of USMA to the extent permitted by law).

35.     USMA has accepted the defense provided by Selective subject to this reservation of rights.

36.     USMA has disputed, and upon information and belief continues to dispute, Selective's determination that there is no coverage under the Policy for damages arising out of the events alleged in the Underlying Action or for USMA's defense costs in the Underlying Action.

37.     USMA contends, and Selective disputes, that Selective should be liable to USMA for any amount USMA may be found to be liable for in the Underlying Action.

38.     The dispute between Selective and USMA  includes any damages USMA may be held liable for in relation to the Crossclaim.

- 19 -

39.     There exists an actual controversy between Selective and USMA as to coverage under the Policy for damages and defense costs arising out of the events alleged in the Underlying Action, including the damages sought by Underlying Plaintiffs in the Underlying Complaint and the damages sought by NBCMA in the Crossclaim.

40.     Accordingly, Selective seeks a determination and declaratory judgment from this Court that there is no coverage under the Policy, and that Selective is not liable to USMA, for damages or defense costs in the Underlying Action or arising out of the events alleged in the Underlying Complaint or the Crossclaim.

WHEREFORE, Plaintiff respectfully requests that a Declaratory Judgment be entered in Selective's favor declaring that:

(1)     there is no coverage under the Selective Policy for USMA for any liability for which USMA may be found liable in the Underlying Action or otherwise arising out of the events alleged in the Underlying Complaint or Crossclaim;

(2)     Selective owes no duty to indemnify USMA for any liability that may be found against USMA in the Underlying Action;

(3)     Selective owes no duty to provide a defense for USMA in or in relation to the Underlying Action;

(4)     Selective shall recover any costs of defense it has paid or incurred for or on behalf of USMA in the Underlying Action;

(5)     Selective is to be reimbursed by USMA for the costs of this Action; and

(6)     Selective is entitled to any other and further relief that this Court may find to be just and proper.

4815-3549-2531.1

*Respectfully submitted,*

**KUTAK ROCK LLP**

**MICHAEL T. MCDONNELL III**
I.D. No. 60111
**AMY J. BLUMENTHAL**
I.D. No. 206304
Kutak Rock LLP
1760 Market Street, Suite 1100
Philadelphia, PA 19103
215-299-4384 / 215-586-4188
michael.mcdonnell@kutakrock.com
amy.blumenthal@kutakrock.com

**ROBERT A. JAFFE**
*(pro hac vice to be applied for)*
1625 Eye Street NW, Suite 800
Washington, DC 20006
202-828-2434
robert.jaffe@kutakrock.com

February 28, 2020
Philadelphia, Pennsylvania

4815-3549-2531.1